IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELEXANDER TARVER, | § | |
|     Plaintiff, | § | CIVIL ACTION NO: 4:16-cv-3700 |
| | § | |
| v. | § | |
| | § | |
| NATIONAL OILWELL VARCO | § | JURY TRIAL DEMANDED |
|     Defendant. | § | |

## COMPLAINT

Plaintiff, Elexander Tarver ("Tarver"), through counsel, files this Complaint against Defendant NATIONAL OILWELL VARCO ("NOV"). In support, Plaintiff states:

## PARTIES

1. Plaintiff Tarver is a citizen of the United States and a resident of the state of Texas, and is otherwise subject to the jurisdiction of this Court.

2. Defendant NOV is a corporation incorporated in Delaware with its principal place of business in Houston, Texas. NOV can be served through its registered agent, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction in this case pursuant to 28 U.S.C. §1331, as Plaintiff's claims arise under the laws of the United States.

4. This Court has personal jurisdiction over Defendants because NOV continuously and systematically do business within the state of Texas and, more specifically, employed the Plaintiff within the state of Texas and maintains its headquarters in the state of Texas. Additionally, all of the claims asserted herein arise out of conduct that occurred within the state of Texas.

1

5. Plaintiff's claim in this Complaint arises pursuant to Title VII of the United States Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII") and 42 U.S.C. §1981. Plaintiff has satisfied any condition precedent required to bring his claim.

6. Venue is appropriate before this Court as all or a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## FACTS

7. Tarver, who is black, began work for Defendant as a machinist in their Houston Facility in approximately December of 2010.

8. NOV is a worldwide provider in the design, manufacture and sale of equipment and components used in oil and gas drilling, completion and production operations, and the provision of oilfield services to the upstream oil and gas industry.

9. Upon arriving at the work location, Tarver found the machine shop racially hostile in that there was a mock-up of a man suspended by a hangman's noose over the machine shop work area.

10. Although the hanging man was eventually removed, the hostile environment continued.

11. Tarver was the only black person working in his department. Throughout his employment, he was subject harassment by his co-workers and general interference with the ability to perform his duties.

12. One example of racial hostility occurred in late 2011 when a co-worker left a newspaper clipping in Tarver's work area depicting Martin Luther King Jr. delivering his "I Have a Dream" speech with the words "FREE WARTER MELONS" handwritten on Dr. King's podium.

13. Another incident in December of 2012. While was using the restroom, Tarver's co-workers arranged magnets at eye-level in the form of a swastika on a metal surface in front of the restroom door, so that Tarver immediately saw it upon exiting the restroom.

14. Also, in the summer of 2013, a white co-worker confronted Tarver, upset about where he parked his car. When Tarver explained that his vehicle had a flat tire, his co-worker called Tarver a "stupid nigger" and physically confronted him.

15. Tarver reported his co-worker's racial slur and physical confrontation to his supervisor.

16. After Tarver reported the confrontation, his supervisor transferred him to a different shift at a lower rate of pay, thus requiring Tarver to work longer hours to maintain the same total compensation.

17. No meaningful action was taken against Tarver's white co-worker who made the racial slur.

18. Following this incident and Tarver's report of racial hostility, NOV began systematically retaliating against Tarver by disciplining him for alleged "infractions" for which white employees who engaged in identical behavior or actions were not disciplined.

19. In early 2014, NOV suspended Tarver for three days based on his supervisor's allegation that Tarver refused to operate a machine. In fact, Tarver operated the machine for over an hour until its regular operator returned to the machine shop.

20. When Tarver was informed of the alleged violation, he explained to NOV's human resources personnel that he has followed his supervisor's instructions, and asked that they review video of the work area which would confirm that Tarver had operated the machine as instructed.

21. NOV human resources refused to review the video evidence, and confirmed Tarver's suspension without additional investigation.

22. On the day Tarver returned from suspension, he stumbled as he was walking to his work area to start his shift. A white co-worker then reported Tarver's stumble to my supervisor as an "act of intimidation" toward him.

23. Based on this report, and without further investigation, Tarver's white supervisor issues him a "final warning."

24. Tarver again asked human resources to review camera footage of the work area, which would show Tarver merely stumbling. Human resources again refused to review video evidence of the alleged incident, and confirmed the unwarranted discipline.

25. A short time thereafter, Tarver's supervisor assigned him to work machine. When Tarver approached the machine, he saw the words "nigger banger" had been etched on the side of the machine and then scratched through.

26. Tarver brought the offensive etching to NOV's attention. However, NOV refused to acknowledge seeing the words "nigger banger" and tried to dismiss it as saying "A 100 large bore," which makes no sense. Tarver's compliant was summarily ignored.

27. My white co-workers continued to harass me, interfere with my duties and create safety hazards in my work area.

28. On March 20, 2014 NOV terminated Tarver's employment in retaliation for Tarver complaining about a hostile work environment and for being treated different from white co-workers.

29. The reason stated by NOV for my termination is a pretext.

30. On March 20, Tarver's white co-workers continued to harass him and interfere with his work. Tarver knew that NOV would take no action if he reported the incident. As the harassment escalated, Tarver kicked a bucket. NOV terminated Tarver for kicking the bucket.

31. White machine shop employees were not terminated for more serious infractions and safety violations than kicking a bucket.

32. Defendant at all times was aware, or should have been aware, that its Houston-area workplaces were rife with racial hostility and discrimination, based on multiple reports and complaints from black employees.

## FIRST CAUSE OF ACTION
## TITLE VII DISPRATE TREAMENT- RACE

33. Tarver incorporates each of the foregoing paragraphs above as if fully set forth herein.

34. Tarver is black, was an employee of Defendant and otherwise a protected individual pursuant to Title VII.

35. Plaintiff was qualified to perform the duties of the position he held while employed with Defendant.

36. Defendant terminated, or constructively terminated, Plaintiff because of his race, to wit, black.

37. Defendant subjected Tarver to unwarranted discipline. At a minimum, Defendant disciplined Tarver disproportionately to the discipline issued to white employees.

38. Defendant knowingly, intentionally, willfully, wantonly and/or with reckless disregard for Plaintiff's rights discriminated against Plaintiff and deprived him of his rights as guaranteed by Title VII.

39. Plaintiff has suffered damages, including emotional distress, as a direct result of Defendant's actions in violation of Title VII.

## SECOND CAUSE OF ACTION
## TITLE VII – HOSTILE WORK ENVIRONMENT

40. Tarver incorporates each of the foregoing paragraphs above as if fully set forth herein.

41. Title VII requires Defendant to maintain a workplace free from racial harassment and hostility.

42. Defendant knowingly, intentionally, willfully, wantonly and/or with reckless disregard for Plaintiff's rights created and/or maintained a racially hostile work environment.

43. Defendant achieved this through its managers, directors, principals, and other managerial employees, who either knew of the hostile environment, refused to mitigate the hostile environment or, in many cases, created and/or encouraged the hostile environment.

44. Plaintiff has suffered damages, including emotional distress, as a direct result of Defendant's actions in violation of Title VII.

## THIRD CAUSE OF ACTION
## TITLE VII – RETALIATION

45. Tarver incorporates each of the foregoing paragraphs above as if fully set forth herein.

46. Title VII requires Defendant to maintain a workplace free from retaliation for engaging in protected activity, such as reporting incidents of racial hostility and harassment.

47. Plaintiff, as described in this Complaint, engaged in activity protected by Title VII.

48. Defendant knowingly, intentionally, willfully, wantonly and/or with reckless disregard for Plaintiff's rights retaliated against Tarver by subjecting him to unwarranted

discipline, subjecting his to discipline disparate from discipline given white workers, terminating or constructively terminating his employment and refusing to investigate alleged workplace violations.

49. Plaintiff has suffered damages, including emotional distress, as a direct result of Defendant's actions in violation of Title VII.

## FOURTH CAUSE OF ACTION
## 42 U.S.C. §1981 DISCRIMINATION

50. Tarver incorporates each of the foregoing paragraphs above as if fully set forth herein.

51. Tarver is black, was an employee of Defendants and otherwise a protected individual pursuant to 42 U.S.C. §1981.

52. Plaintiff provided services to Defendant through a contract of employment.

53. Defendant knowingly, intentionally, willfully, wantonly and/or with reckless disregard for Plaintiff's rights discriminated against Plaintiff based on his race.

54. Plaintiff has suffered damages, including emotional distress, as a direct result of Defendant's actions in violation of 42 U.S.C. § 1981.

## FIFTH CAUSE OF ACTION
## 42 U.S.C. §1981 HOSTILE WORK ENVIRONMENT

55. Tarver incorporates each of the foregoing paragraphs above as if fully set forth herein.

56. Tarver is black, was an employee of Defendants and otherwise a protected individual pursuant to 42 U.S.C. §1981.

57. Plaintiff provided services to Defendant through a contract of employment.

58. Defendant knowingly, intentionally, willfully, wantonly and/or with reckless disregard for Plaintiff's rights maintained, permitted or created a racially hostile work environment.

59. Plaintiff has suffered damages, including emotional distress, as a direct result of Defendant's actions in violation of 42 U.S.C. § 1981.

## SIXTH CAUSE OF ACTION
## 42 U.S.C. §1981 RETALIATION

60. Tarver incorporates each of the foregoing paragraphs above as if fully set forth herein.

61. Tarver is black, was an employee of Defendants and otherwise a protected individual pursuant to 42 U.S.C. §1981.

62. Plaintiff provided services to Defendant through a contract of employment.

63. Defendant knowingly, intentionally, willfully, wantonly and/or with reckless disregard for Plaintiff's rights maintained, retaliated against Tarver for engaging in activity protected by 42 U.S.C. § 1981.

64. Plaintiff has suffered damages, including emotional distress, as a direct result of Defendant's actions in violation of 42 U.S.C. § 1981.

## JURY DEMAND

65. Tarver demands a trial by jury with respect to all claims so triable.

## ATTORNEYS' FEES

66. Pursuant to Title VII and 42 U.S.C. §1981, Tarver hereby demands recovery of all reasonable and necessary attorneys' fees incurred in the prosecution of this matter.

## PRAYER

Accordingly, Plaintiff Elexander Tarver prays that the Court:

    a)    enter judgment in his favor for Defendants' discrimination against him;

    b)    award him back pay, reinstatement and/or front pay, as well as compensatory and punitive damages;

    c)    award attorney's fees, expert fees and costs to Plaintiff pursuant to Title VII and 42 U.S.C. §1981; and

    d)    award such other and further relief to which Plaintiff may show himself entitled.

                                            Respectfully submitted,

                                            s/ Alan Quiles
                                            **Alan L. Quiles**
                                            Texas Bar No. 24075418
                                            1515 S. Federal Highway, Suite 404
                                            Boca Raton, FL  33432
                                            Telephone: (561) 447-8888
                                            Fax: (561) 447-8831
                                            aquiles@shavitzlaw.com

                                            ATTORNEY FOR PLAINTIFF

Signed this 21st  day of December, 2016.